NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0100n.06

No. 20-6242

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM MICHAEL FIELDS, JR.,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 04, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

Before: SUTTON, Chief Judge; GIBBONS and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant William Fields used a cell phone to digitally record himself engaging in sexual activity with a seventeen-year-old girl. A jury convicted Fields on two child-pornography counts, and the district court imposed a below-Guidelines sentence of 420 months' imprisonment. On appeal, Fields raises several issues relating to his trial and sentence. Because none has merit, we affirm.

I.

We begin with two pretrial matters—the district court's denial of a last-minute motion by defense counsel to withdraw and a related motion to continue the trial.

A grand jury indicted defendant on October 17, 2019. Following his initial appearance and arraignment, the district court continued the trial three times on Fields's motions and once on its own due to the onset of the COVID-19 pandemic. Trial was to begin on June 1, 2020.

Two weeks before trial, on May 19, 2020, Fields's counsel Christopher Spedding moved to withdraw. His sparse motion stated that during the week prior, Fields "informed Counsel that he was retaining another attorney and that he no longer required Counsel's services." Several days went by without hearing from substitute counsel, so Spedding arranged for a video conference with Fields. But Fields "refused to speak with Counsel." Spedding later supplemented his motion, informing the district court that he had received several jailhouse recordings involving Fields in which he learned that Fields "had fired [him] and retained new counsel" and that Fields "may end up filing a bar complaint" against him.

Spedding provided a few more details during the district court's Friday, May 29, 2020, hearing on the motion: during the calls, Fields "expressed his dissatisfaction with [Spedding] and [his] approach to how the case should be resolved" and discussed firing Spedding, retaining new counsel, and possibly filing a bar complaint against Spedding. After hearing only from Spedding and the government, the district court concluded that, because it could not discern any "real conflict in the case, other than there's some disagreement about the way the matter ought to be resolved" or breakdown in communications, it appeared that defendant was "attempting to prevent this case from going forward" and maybe even was doing so in the hopes that the victim was not going to stay in the state. So, the district court denied the motion "at this late stage."

On the following Monday morning, the first day of trial, Spedding generically asserted that he was "not ready" and requested another continuance. Other than an apparent "logistical issue" that prevented Spedding and Fields from conferring on Saturday (yet they did meet on Sunday), Spedding gave the district court no other reason to continue trial. The district court denied the motion, noting that the trial had been continued multiple times already and again noted a lack of good cause given its finding that Fields intentionally did not prepare to avoid trial.

A.

Generally, a criminal defendant is entitled "to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006). But "[t]he right to counsel of *choice,* unlike the *right* to counsel . . . is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). We review the district court's denial of a motion to withdraw for an abuse of discretion, considering "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

*Timeliness*. This factor weighs heavily against Fields, as a request for new counsel just weeks before trial is untimely. *See United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017) (collecting cases). Fields says otherwise, faulting the district court for not scheduling a hearing on the motion until the last business day before trial was to begin. But when evaluating such a motion, the first factor considers "timeliness *of the motion*," not the district court's action on it. *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

*District Court's Inquiry*. Our caselaw provides that when faced with "a defendant wishing to substitute counsel [who] 'bring[s] any serious dissatisfaction with counsel to the attention of the district court,'" the district court must "inquire into the defendant's complaint and determine whether there is good cause for the substitution." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (quoting *Iles*, 906 F.2d at 1131–32). The district court did not question Fields at the

hearing. But Fields never expressed a desire to speak to the district court, and, as Spedding even emphasized to the district court, no substitution motion was ever filed by Fields or another attorney on his behalf. And regardless, engagement with a defendant in person is just the "usual[]" rule and is not triggered when a defendant fails to "show his hand" in the first instance. *Iles*, 906 F.2d at 1131 (citation omitted). Here the district court made some inquiry into the nature of the relationship between Spedding and Fields in open court, with Spedding summarily asserting the two were discordant. Fields stood mute during that colloquy. *Cf. Iles*, 906 F.2d at 1131–32; *United States v. Ellens*, 43 F. App'x 746, 749–50 (6th Cir. 2002). The district court's inquiry could have been more thorough by allowing "all of the interested parties to present their respective evidence and arguments" concerning Spedding's representation of Fields. *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004). But the district court did make an inquiry of Spedding, so this factor, while lacking, was not wholly absent. Thus, we conclude this factor marginally supports withdrawal. *See, e.g.*, *United States v. DeBruler*, 788 F. App'x 1010, 1013 (6th Cir. 2019).

*Extent of the Conflict.* A lack of communication resulting from a defendant's refusal to cooperate with his attorney does not constitute good cause for substituting counsel. *United States v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009). Nor do "differences of opinions" on how to defend a case. *Powell*, 847 F.3d at 779 (citation omitted). We see no reason to reject the district court's conclusion that without more specific evidence or reason for the conflict, their relationship was not irreconcilable. This factor weighs against Fields.

*Public's Interest.* This final factor strongly supports the district court's decision. "When the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *Vasquez*, 560 F.3d

at 467 (citation omitted). Here the district court was appropriately concerned with promptly administering justice considering the numerous resources expended, the various continuances requested by defendant, and the victim's travel schedule. Its on-the-ground perspective merits significant respect when reviewing the cold appellate record.

"An abuse of discretion occurs where the district court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Id.* at 466 (internal quotation marks omitted). Having reviewed the pertinent factors, we cannot agree with Fields that the district court's denial of Spedding's motion to withdraw rises to this level.

B.

Fields also contends the district court erred by refusing to delay his trial. In his briefing, he complains about having received numerous electronic documents and files from the government and being unable to review them with his attorney. But he presented those concerns to the district court in several motions to continue trial, which the district court granted. The only time the district court denied a motion by Fields to continue was on the first day of trial. Having granted Fields several continuances and then been presented with a generic "not ready" assertion, we cannot conclude the district court's denial on that day constitutes "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (internal quotation marks omitted).

II.

Fields presses two trial-related issues on appeal, the sufficiency of the evidence supporting his child-pornography convictions and the district court's limiting of his cross-examination of the victim.

A.

A defendant violates 18 U.S.C. § 2251(a) if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]"  This is a "specific-intent crime, which requires that the defendant must purposefully or intentionally commit the act that violates the law and do so intending to violate the law." *United States v. Frei*, 995 F.3d 561, 566 (6th Cir. 2021).  Thus, the government must prove "that the defendant acted with the intent to create visual depictions of sexually explicit conduct, and that the defendant knew the character and content of the visual depictions." *Id.* (internal quotation marks and emphases omitted).

On appeal, Fields contends that the record evidence demonstrates the recordings were a product of a "spontaneous decision to create a visual depiction in the middle of sexual activity" and thus the government did not establish he engaged in the "sexually explicit conduct for the purpose of producing" child pornography.  *United States v. McCauley*, 983 F.3d 690, 695–96 (4th Cir. 2020).  But we do not consider whether Fields clears the "high bar" necessary to set aside the jury's verdict for this sufficiency-of-the-evidence challenge, *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017), as Fields has forfeited our review of this issue.

After the government completed its case-in-chief, Fields moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on one ground only—that the evidence was "insufficient to sustain a conviction to show that Mr. Fields was the one [who] was actually taking the video."  "[W]here a Rule 29 motion is made on specific grounds," we find forfeited all non-specified grounds.  *United States v. Hamm*, 952 F.3d 728, 739–40 (6th Cir. 2020).  By specifying in the district court a challenge to the proofs concerning who made the videos, he cannot now press his purpose-of-the-sexual-activity ground for relief in this court.

B.

The other trial issue deals with the limits imposed by the district court on what defendant could ask of his victim. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment. . . ." *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). The Sixth and Fourteenth Amendments guarantee the right of a criminal defendant in a state or federal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI; *id.* amend XIV; *see also Crawford v. Washington*, 541 U.S. 36, 42 (2004). Cross-examination is a "primary interest" secured by the Confrontation Clause and "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (citation omitted). A criminal defendant's confrontation rights are not limitless, however. "[T]rial judges [may] . . . impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Where "it is merely the extent of cross-examination that is limited," the Confrontation Clause question is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (citation omitted). Under this standard, it is only "when the defense is not allowed to place before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred," *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) (alterations, internal quotation marks, and emphasis omitted), that "there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause," *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000). "We review a district court's decision to limit the

scope of cross-examination under the abuse-of-discretion standard." *United States v. Howard*, 621 F.3d 433, 456 (6th Cir. 2010).

Fields claims the district court wrongly precluded him from "presenting evidence, asking questions, or making arguments at trial relating to the defenses of mistake-of-age or consent." He argues that he should have been permitted to introduce evidence of the minor's age (including her allegedly having lied to him and others about it) and her having consented to the sexual activity. But as the district court correctly noted, § 2251(a) contains no defense for "mistake-of-age," *United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010), or "consent," *United States v. Sibley*, 681 F. App'x 457, 461 (6th Cir. 2017). The district court therefore acted within its bounds to prevent Fields from broaching those topics. And to the extent Fields wanted to use this evidence to otherwise impeach his victim's testimony, we discern no abuse of discretion in the district court's conclusion that "the probative value of the proposed cross-examination is substantially outweighed by a danger of unfair prejudice because it likely will confuse the issues and mislead the jury."

## III.

That brings us to two sentencing challenges: the substantive reasonableness of Fields's custodial sentence and one of his special conditions of supervised release.

## A.

The Guidelines range for Fields's convictions was 720 months, but the district court varied downward and imposed a 420-month sentence. Defendant claims this below-Guidelines sentence is substantively unreasonable because it reflects an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). We "consider the substantive reasonableness of the sentence imposed under an

abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is substantively unreasonable when a district court "place[s] too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A sentence within the Guidelines range is entitled to a presumption of reasonableness and where, as here, a below-Guidelines sentence is imposed, "simple logic compels the conclusion that . . . defendant's task of persuading us that the more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Fields gives us no reason to conclude his challenge overcomes this "heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013). A thorough review of the sentencing transcript reflects that the district court carefully considered the § 3553(a) factors, emphasizing the severity defendant's "grievous mistake," his lack of demonstrating remorse to the victim and her family, and his crime's impact. Together, these dictated a "significant sentence"—albeit one with a "significant variance[.]" Fields's displeasure with the district court's weighing of the factors does not make his sentence substantively unreasonable. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013).

On § 3553(a)'s disparity factor, which Fields says should have rendered a lesser sentence, the district court criticized the government's submission of purportedly similar cases within that judicial district given the national—not district-level—lens the statutory factor commands. *See* § 3553(a)(6); *Greco*, 734 F.3d at 451. But we do not understand, as Fields does, that the district court's explanation for why just focusing on raw Guidelines numbers generally (even if national) when examining sentencing disparities "is of limited value" demonstrates that it "did not meaningfully consider Mr. Fields's sentencing disparity argument" or give sufficient weight to it.

Nor do we find persuasive defendant's post-sentencing citation to recent data from the Sentencing Commission concerning sexual-abuse offenses. He did not present that information to the district court, and even if he did, we do not "require[] a district court to consult the Sentencing Commission's collected data before issuing a sentence." *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021). This is because we give attention to how a district court calculates the Guidelines range, and if done so correctly (which Fields does not dispute here), "it has necessarily taken into account the need to avoid unwarranted sentence disparities, viewed nationally." *Id.* (internal quotation marks omitted). Stated differently, the district court's over-forty-percent variance "was far below the Guidelines, and that range is considered good evidence of the national standard." *United States v. Simmons*, 501 F.3d 620, 627 (6th Cir. 2007).

For these reasons, Fields did not demonstrate that his below-Guidelines sentence was substantively unreasonable.

## B.

Fields next challenges just one of the fourteen imposed special conditions of supervised release. Condition Number Six provides: "You must not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available." Fields argues this condition constitutes a "greater deprivation of liberty than is reasonably necessary," *see* 18 U.S.C. § 3583(d)(2), because it can be read as prohibiting access to any location where the Internet is available.

Fields does not allege a procedural error, so we review the district court's special conditions of supervised release for substantive reasonableness. *United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006). A non-mandatory supervised-release condition is substantively reasonable if it (1) "is reasonably related to . . . the nature and circumstances of the offense and the history and

characteristics of the defendant, and the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (2) "involves no greater deprivation of liberty than is reasonably necessary to achieve these goals"; and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Zobel*, 696 F.3d 558, 573 (6th Cir. 2012) (citation omitted). But because Fields did not raise this objection below, plain-error review applies. *Id.* at 572. And we cannot agree that Fields has demonstrated an obvious error affecting his substantial rights and the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 566.

The district court imposed a reasonable condition that limits Fields's access to sexually explicit materials based on his child pornography convictions. Fatal to his challenge is that no binding caselaw prohibited the district court from imposing this condition. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Citing *United States v. Inman*, Fields says otherwise. 666 F.3d 1001 (6th Cir. 2012) (per curiam). That case is of no help to Fields because it: (1) involved a different special condition (one that restricted the defendant's access to computers); and (2) did not find a substantive-reasonableness error. Instead, we remanded to the district court for "a more thorough analysis of the pertinent sentencing factors" (i.e., to remedy the defendant's procedural challenge—that it did not adequately explain his sentence). *Id.* at 1004–06. Moreover, and as the government notes, our caselaw involving plain error challenges to the same condition arising from the same judicial district is not in defendant's favor. *See, e.g.*, *United States v. Chase*, 740 F. App'x 833, 835–36 (6th Cir. 2018).

IV.

Finally, having identified no error below, Fields is not entitled to reversal of his convictions based cumulative error, *see United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011), and we have no need to consider his request for reassignment, *see United States v. Jeross*, 521 F.3d 562, 587 (6th Cir. 2008).

V.

For these reasons, we affirm the district court's judgment.