NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0484n.06

No. 24-5558

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 20, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| | ) | |
| PIERRE RODRICUS BURNS, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, LARSEN, and BLOOMEKATZ, Circuit Judges.

KETHLEDGE, Circuit Judge. Pierre Burns was convicted of sexually exploiting minors and witness tampering, and the district court sentenced him to 240 months in prison. He now challenges his convictions and sentence. We reject his arguments and affirm.

I.

In February 2020, two young girls—Trinity and Emilie—ran away from a Nashville shelter for minor victims of human trafficking. Trinity arranged for a man she had met on Tinder—Pierre Burns—to pick them up from a nearby Waffle House so they could stay with him. Over the next few days, Burns took dozens of sexually explicit pictures and videos of the girls, including videos in which Burns directed them as they engaged in oral sex. Emilie left first; after brief stays in juvenile detention and a hospital (for drug intoxication), she returned to the shelter. Two days later, Trinity told the shelter where she was, and the shelter told Nashville police. The police stopped Burns's car that same day and returned Trinity to the shelter. The police later searched Burns's phone and found the photos and videos of the girls.

A grand jury indicted Burns under 18 U.S.C. § 2251(a) on two counts of sexual exploitation of a minor. In the leadup to trial, Burns's counsel inadvertently gave him Emilie's phone number, which Burns used to call her from jail. Burns was then indicted on the additional charge of witness tampering under 18 U.S.C. § 1512, and the district court reset his trial for early January 2024.

At trial, Burns was convicted on all counts. At sentencing, the district court calculated Burns's guidelines range to be 360 months to life, but departed downward and sentenced him to 240 months in prison. The district court deferred ordering restitution, though it eventually imposed an award to each victim and incorporated it into an amended judgment. This appeal followed.

## II.

### A.

Burns argues that the district court violated the Rules of Evidence, the Criminal Rules, and the Constitution in admitting certain evidence and barring other evidence and arguments. We review his challenges under the Federal Rules for an abuse of discretion. *United States v. Davis*, 306 F.3d 398, 420 (6th Cir. 2002). We review his constitutional challenges de novo. *United States v. Underwood*, 129 F.4th 912, 940 (6th Cir. 2025).

#### 1.

Burns argues that the district court erred on three grounds by admitting Trinity's putative birth certificate to prove that she was a minor at the relevant time.

First, he says the birth certificate was irrelevant because it was merely the birth certificate of "a person with the same name" as Trinity. As he concedes, however, a shelter employee testified that the shelter had received a copy of the same document from the agency that referred her there. Thus, the certificate was sufficiently connected to Trinity to make her minority more probable than without it. Fed. R. Evid. 401.

Second, he says that the government violated the Criminal Rules by disclosing the birth certificate to him "just two business days" before trial, and so the district court should have excluded it. Rule 16(a)(1)(E) requires the government to allow a defendant to inspect certain documents within its "possession, custody, or control." The government must produce documents under the rule, however, only after it acquires them. *See United States v. Llanez-Garcia*, 735 F.3d 483, 493-94 (6th Cir. 2013). Here, the government produced the certificate to Burns within a day of receiving it. He does not assert that the government acted in bad faith. Nor does he dispute that the government only belatedly saw a need for the birth certificate after it lost contact with Trinity and a relative, both of whom could have testified about her age. The government complied with Rule 16.

Third, he says that the birth certificate's admission violated the Confrontation Clause. That clause, however, forbids the introduction only of "testimonial" records—being those created with the primary purpose of later being introduced in court. *Smith v. Arizona*, 602 U.S. 779, 801-02 (2024). The birth certificate—a vital record created as a matter of course—is not testimonial, and the Confrontation Clause thus does not apply.

2.

Burns argues on three grounds that the district court violated his rights under the Constitution by precluding him from raising a mistake-of-age defense.

First, he says that his convictions under 18 U.S.C. § 2251(a) violated the First Amendment because he could not raise the mistake-of-age defense. This court has held, however, that the First Amendment does not require making such a defense available in prosecutions under § 2251(a). *United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010). So that contention is meritless.

-3-

He next contends that the court violated his Sixth Amendment right to present a complete defense by barring evidence that he was deceived by Emilie and Trinity about their ages. A district court violates a defendant's right to present a complete defense if, among other requirements, the "omitted evidence would have created a reasonable doubt about the defendant's guilt that would not have existed based on the admitted evidence alone." *United States v. Reynolds*, 86 F.4th 332, 351 (6th Cir. 2023) (citation modified). Evidence that Trinity and Emilie deceived Burns about their ages does not go to any element of § 2251(a) and so would have failed to create reasonable doubt as to his guilt.

Burns last contends that the court violated his right to confront the witnesses against him by preventing him from cross-examining Trinity or Emilie about this alleged deception. To make out a Confrontation Clause violation in this context, a defendant must show that the district court limited his ability to cross-examine a witness about the witness's "bias, prejudice, or motive to testify." *United States v. Taylor*, 127 F.4th 1008, 1014 (6th Cir. 2025). But Burns just wanted to impeach Trinity and Emilie's credibility by invoking their earlier (alleged) untruthfulness. Thus, no Confrontation Clause violation occurred.

B.

Burns also challenges the sufficiency of the evidence supporting his convictions. We must uphold them if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

1.

Burns attacks his convictions under § 2251(a) on the ground that the government failed to show that Trinity and Emilie were minors. But Trinity's birth certificate alone—which shows that

-4-

she was born in 2005—supports such a finding as to her. Also, a shelter employee testified that Trinity and Emilie lived there when it housed only minors, and that they did not "become adults" in February or March 2020; a Homeland Security Investigations agent testified that the agency had verified that they were minors; and Emilie testified that after she left Burns's apartment, she was taken to "juvie." Emilie's testimony that she was born in 2002—and thus turned 18 sometime in 2020—does not compel the finding that she was an adult when with Burns. Ample evidence supports the jury's finding that she was then a minor.

2.

Burns also challenges his conviction for witness tampering. The conviction stands if a rational jury could have found that he urged a witness to lie at trial. *United States v. Johnson*, 79 F.4th 684, 711 (6th Cir. 2023).

Here, the jury heard Burns's jail call to Emilie, during which she initially professed not to remember him—but with his prompting, asked him if he was the person who liked "taking pictures" and admitted that she remembered him and "the situation with Trinity and the Waffle House." Burns then asked if she had talked to the prosecution and, on hearing that she had, told her that she was the only thing that they could use to send him to prison. Burns encouraged her, if she were called to testify, to say that she remembered nothing. A jury reasonably could have found that Burns was not urging Emilie to testify truthfully, as he contends, but rather pressuring her to testify falsely in his favor. Sufficient evidence therefore supported this conviction as well.

C.

Burns last attacks his sentence and the restitution order. He says the district court abused its discretion by sentencing him to 240 months in prison—well below his guidelines range—because it should have weighed the girls' deception and his difficult life more heavily, and because

his criminal history score, though properly calculated, overstated his criminality.  We disagree. The district court considered each of these things, and none is "so compelling as to necessitate a shorter sentence" than the one the court imposed.  *United States v. Nunley*, 29 F.4th 824, 834 (6th Cir. 2022).

The restitution order, finally, is not before us:  Burns did not appeal the amended judgment imposing it, and the government has called that failure to our attention.  *Manrique v. United States*, 581 U.S. 116, 125 (2017).

\* \* \*

The district court's judgment is affirmed.